UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DEVAL MOWATT,

Plaintiff,

– against –

THE CITY OF NEW YORK, DEPUTY MELISSA MATTHEWS, CAPTAIN CHARLES HARRIS, and CORRECTIONS OFFICER JOHNSON,

Defendants.

**OPINION AND ORDER**

15 Civ. 10104 (ER)

Ramos, D.J.:

*Pro se* Plaintiff Deval Mowatt brings this action against Deputy Melissa Matthews ("Matthews"), Captain Charles Harris ("Harris"), Corrections Officer Johnson ("Johnson"), and the City of New York (the "City," and collectively "Defendants") pursuant to 42 U.S.C. § 1983, alleging that the conditions of his confinement at Rikers Island Correctional Facility ("Rikers") amounted to cruel and unusual punishment in violation of the Eighth Amendment.

Before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons discussed below, the motion is GRANTED as to Defendant City of New York and is DENIED as to Defendants Matthews, Harris, and Johnson.

## I. Factual Background[1]

On October 15, 2015, while in the custody of the New York City Department of

[1] The following facts are drawn from allegations contained in the Amended Complaint, Doc. 7, which the Court accepts as true for purposes of the instant motion. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

Correction, Plaintiff was placed in "C95 Housing area 5 upper cell 16," a cell in the Anna M. Kross Center on Rikers Island. Amended Complaint ("Am. Compl."), Doc. 7, at II.D. Upon entering, Plaintiff realized that the cell was "corroted [sic] [and] polluted" and that the "ceiling was vulnerable of a collapse [sic]." *Id.* After complaining about the condition of the cell, Plaintiff was moved to cell 23. *Id.* Two days later, Johnson removed Plaintiff from cell 23 and returned him to cell 16—the cell that was in disrepair. *Id.* Plaintiff alleges that although he was told he had to return to the cell for "security reasons," the actual purpose of the move was to punish him, particularly because other cells, presumably in habitable conditions, were available at the time of his move. *Id.* On October 17, 2015, Plaintiff complained to Johnson, Harris, and Matthews and explained to them that cell 16 was "on [the] verge of collapse." However his requests to be moved were denied. *Id.* Two days later, on October 19, while Plaintiff was sitting in his cell, the ceiling collapsed on his head. Upon hearing the collapse, Johnson went over to the cell, saw debris on floor, and took Plaintiff to the medical ward where he was prescribed Tylenol. *Id.* After receiving an injury report Plaintiff was again placed in cell 16 over his repeated objections. *Id.* The next morning, Plaintiff was moved to a different cell. *Id.* A few days later, Plaintiff went back to the medical facility, where he received Ibuprofen. *Id.* at III. Plaintiff claims that as result of the collapse, he suffers from, among other things, severe head and neck pain, dizziness, blurred vision, and weakness of limbs.

## II. Procedural Background

Plaintiff commenced this action on December 29, 2015. Doc. 1. On February 9, 2016, the Court directed Plaintiff to file an Amended Complaint, Doc. 6, which he filed on February 25, 2016. Doc. 7. On March 23, 2016, the Court issued an Order of Service requesting that Defendants waive service of summons. Doc. 10. On April 13, 2016, the waiver of service was

returned executed as to Matthews, Harris, and the City. Docs. 13, 15. The waiver of service was returned unexecuted as to Johnson, who could not be properly identified because the name is so common. Doc. 14. The City, Matthews, and Harris filed the instant motion on June 13, 2016.[2] Doc. 17. On November 2, 2016 the Court issued a Valentin Order directing counsel for Defendants to provide Johnson's full name and service address within 60 days of the order. Doc. 22. On January 31, 2017 – more approximately one month after the due date – the Court issued an order directing counsel for Defendants to file a response by February 3, 2017. Doc. 23. In response, counsel asked for a two week extension, which the Court granted. Docs. 25, 26. On February 26, counsel again requested a two week extension. Doc. 27. Though the Court granted the extension, to date, counsel has not responded to the November 2, 2016 Valentin Order.

## III. Standard of Review

On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must accept as true all of the factual allegations from the complaint, and draw all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). However, this requirement does not apply to legal conclusions, bare assertions, or conclusory statements. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The complaint must adhere to Rule 8(a), which has been interpreted to require that it contain enough factual matter for the claim to be plausible on its face. *Id.* (citing *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Rule 8(a) "does not unlock the

[2] Though counsel for Defendants note that Johnson has not been served with the Amended Complaint, counsel requests that any relief granted to the City, Matthews, and Harris also extend to Johnson. Memorandum of Law in Support of Motion to Dismiss Amended Complaint ("Def. Memo") (Doc. 18) at 2 n.1.

doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. at 678-79. If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] Complaint must be dismissed." *Twombly*, 550 U.S. at 570.

The same standard applies to motions to dismiss *pro se* complaints. *See Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010). However, the Court is also obligated to construe a *pro se* complaint liberally and to interpret a *pro se* plaintiff's claims as raising the strongest arguments that they suggest. *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam). The obligation to be lenient while reading a *pro se* plaintiff's pleadings "applies with particular force when the plaintiff's civil rights are at issue." *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). "However, even *pro se* plaintiffs asserting civil rights claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a right to relief above the speculative level." *Id*. (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). A complaint that "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks and brackets omitted); *see also Triestman*, 470 F.3d at 477 ("*[P]ro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'") (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)) (internal quotation marks omitted).

## IV. Discussion

To state a claim under section 1983, a plaintiff must allege "that the conduct complained of was committed by a person or entity acting under color of state law, and that the conduct deprived a person of rights, privileges, or immunities secured by the Constitution." *Newton v.*

*City of New York*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008) (citing *Palmieri v. Lynch*, 392 F.3d 73, 78 (2d Cir. 2004)). Section 1983 does not create any rights, but merely provides "a procedure for redress for the deprivation of rights [already] established." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted). The conduct complained of must have "deprived the plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States." *Eagleston v. Guido*, 41 F.3d 865, 876 (2d Cir. 1994). In the instant case, the alleged constitutional violation falls within the ambit of the Eighth Amendment.

**A. Eighth Amendment Claims**

"The Eighth Amendment, which applies to the States through the Due Process Clause of the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes." *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991). The Eighth Amendment requires that prison officials take "reasonable measure[s] to guarantee the safety of inmates in their custody." *Hayes v. New York City Dep't of Corrections*, 84 F.3d 614, 620 (2d Cir. 1996); *see also Gilmore v. Rivera*, No. 13 Civ. 6955 (RWS), 2014 WL 1998227, at *2 (S.D.N.Y. May 14, 2014) ("Prison officials may neither deprive a prisoner of basic human needs, *e.g.*, food, clothing, shelter, medical care, and reasonable safety, nor expose an inmate to conditions that pose an unreasonable risk of serious damage to his future health.") (citations omitted). And while the Constitution does not mandate comfortable prisons, prisoners are entitled to satisfaction of their basic human needs. *Randle v. Alexander*, 960 F. Supp. 2d 457, 470 (S.D.N.Y. 2013) (quoting *Helling v. McKinney*, 509 U.S. 25, 32 (1993)). "To prove a violation of the Eighth Amendment, an inmate must show (1) that the deprivation alleged is 'objectively sufficiently serious' such that the plaintiff was denied 'the minimal civilized measure of life's necessities,' and (2) that the defendant official possessed a 'sufficiently culpable state of mind'

associated with 'the unnecessary and wanton infliction of pain.'" *Trammel v. Keane*, 338 F.3d 155, 161 (2d Cir. 2003); *see also Farmer v. Brennan*, 511 U.S. 825, 834 (1994) ("the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm."); *Fair v. Weiburg*, 02 Civ. 9218 (KMK), 2006 WL 2801999, at *5 (S.D.N.Y. Sept. 28, 2006) ("[U]nder the Eighth or Fourteenth Amendments, a prisoner must show that the prison official or state actor, acting with deliberate indifference to the prisoner's safety, subjected the prisoner to a sufficiently serious deprivation.").

**1. Objective Component**

To satisfy the objective component, a plaintiff must allege a "sufficiently serious" deprivation such that the deprivation "denied the minimal civilized measure of life's necessities." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013). Generally, the "[n]ormal conditions of … confinement do not constitute an Eighth Amendment violation" and "[s]uch confinement is not abnormal unless it is 'without penological justification, grossly disproportionate, or involving the unnecessary and wanton infliction of pain.'" *Branch v. Goord*, No. 05 Civ. 6495 (WHP), 2006 WL 2807168, at *5 (S.D.N.Y. Sept. 28, 2006) (quoting *Smith v. Coughlin*, 748 F.2d 783, 787 (2d Cir. 1984)). "Although the seriousness of the harms suffered is relevant to calculating damages and may shed light on the severity of an exposure, serious injury is unequivocally not a necessary element of an Eighth Amendment claim." *Willey v. Kirkpatrick*, 801 F.3d 51, 68 (2d Cir. 2015) (citing *Hudson v. McMillian*, 503 U.S. 1, 4 (1992)).

Here, Plaintiff alleges that he was forced to sleep in a cell where the ceiling was likely to, and in fact did, collapse. Am. Compl. at II.D. Defendants, in support of their motion to dismiss, assert that Plaintiff "offers no further details about the conditions of his cell" and as such they assert that he cannot establish that the cell was unconstitutionally unsafe. Memorandum in

Support of Motion to Dismiss Amended Complaint ("Def. Memo"), Doc. 18 at 6. However, taking the allegations in the Amended Complaint as true, the Court finds that a cell that is allegedly in such an extreme state of disrepair, that Plaintiff immediately expressed his fear that the ceiling was vulnerable to collapse, and that the ceiling actually caved in on Plaintiff, cannot be said to constitute "adequate shelter" as required by the Eighth Amendment. *See e.g.*, *Neal v. Hauf*, 475 F. App'x 704, 705 (10th Cir. 2012) (finding that inmate's allegation that "a piece of concrete fell from the top part of the [cell] wall above his bunk and struck him on the head" were sufficiently serious to satisfy the first prong of Eighth Amendment claim); *Hudson v. Levenhagen*, No. 14 Civ. 0456 (JD), 2014 WL 2738560, at *1 (N.D. Ind. June 16, 2014) (noting that cracks in ceiling in shower of correctional facility posed a substantial risk); *Quarles v. Palakovich*, No. 07 Civ. 1905 (TIV), 2008 WL 1924257, at *4 (M.D. Pa. Apr. 29, 2008) (finding that inmate's allegations that he had reported the damaged ceiling, that defendants disregarded complaints, and that the ceiling fell on him, were sufficient to state a claim for Eighth Amendment violation). While "[t]here is no bright line separating an unreasonable danger from a reasonable one," *Coniglio v. Thomas*, 657 F. Supp. 409, 414 (S.D.N.Y. 1987), the Court finds that the circumstances described in the Amended Complaint are "sufficiently serious" to meet the objective component of the Eighth Amendment. Of course, this conclusion is buttressed by the individual Defendants' own actions, who allegedly moved Plaintiff to another cell because of the physical condition of cell 16.

Defendants further claim that since "[Plaintiff's] injuries required nothing more than Tylenol and ibuprofen" the injuries could not have been sufficiently serious to establish liability. Def. Memo at 6. Defendants' focus on the injury is unavailing. There is no requirement that the actual injuries suffered be sufficiently serious. *See Willey*, 801 F.3d at 68 (holding that "serious

injury is unequivocally *not* a necessary element.") (emphasis added); *see also Heisler v. Kralik*, 981 F. Supp. 830, 836 (S.D.N.Y. 1997), *aff'd sub nom. Heisler v. Rockland Cty.*, 164 F.3d 618 (2d Cir. 1998) (rejecting an analysis that turns on the severity of the injury since it "would assess a prison official's actions based on hindsight, rather than on the facts and circumstances of which the official was aware at the time he acted or failed to act.").

Accordingly, Plaintiff has plead sufficient facts that, if true, would meet the objective component of the Eighth Amendment.

**2. Subjective Element**

To establish the subjective element of an Eighth Amendment claim, a plaintiff must allege facts showing that a defendant either knew of and disregarded an "excessive risk of inmate health and safety" or that he was aware of facts from which it could reasonably be inferred that a substantial risk of serious harm existed. *Caiozzo v. Koreman*, 581 F.3d 63, 71 (2d Cir. 2009); *see also Farmer*, 511 U.S. at 837. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence … and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842. Accordingly, "[a] prison official acts with deliberate indifference and thus 'has sufficient culpable intent if he has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measure to abate the harm.'" *Lee v. Artuz*, No. 96 Civ. 8604 (JGK), 2000 WL 231083, at *4 (S.D.N.Y. Feb. 29, 2000) (quoting *Hayes*, 84 F.3d at 620).

Here, Defendants assert that Plaintiff's failure to make any "allegations about what the individual Defendant[s] *actually* knew or understood at the time" necessarily means that

Plaintiff's allegations do not satisfy the subjective prong of his Eighth Amendment claim. Def. Memo at 7 (emphasis added). The Court disagrees. Plaintiff explicitly alleges that he told Defendants about the condition of the cell and of the potential of the ceiling to collapse. From this fact it can plainly be inferred that Defendants knew that the cell was unsafe. Indeed, taking Plaintiff's allegations as true, Defendants initially moved Plaintiff from the cell precisely because they were made aware by Plaintiff of the danger it posed.

Even assuming *arguendo* that Defendants did not have actual knowledge that cell 16 was unsafe, the Court finds that Plaintiff has sufficiently alleged that Defendants were aware of facts from which the risk of substantial harm could reasonably be inferred. *See Blake v. Kelly*, No. 12 Civ. 7245 (ER), 2014 WL 4230889, at *5 (S.D.N.Y. Aug. 26, 2014) (stating that prison officials may still be liable when a plaintiff pleads sufficient facts to show that a prison official "was aware of facts from which it could reasonably be inferred that a substantial risk of serious harm existed") (citing *Farmer*, 511 U.S. at 837). Plaintiff told Defendants about the conditions of the cell on October 15, when he was first moved, and then continuously complained to the Defendants for two more days after he was moved to cell 16.[3] *See Walker v. Schult*, 717 F.3d 119, 129 (2d Cir. 2013) (holding that plaintiff had adequately alleged that defendants violated subjective component when plaintiff told them of the harmful conditions of the cell). Despite Plaintiff's warnings, Defendants did not permanently move Plaintiff until the day after the ceiling caved in on him. Thus, at this stage, Plaintiff has alleged sufficient facts to state a claim. Accordingly, Defendants' motion to dismiss as to Matthews, Harris, and Johnson is denied.

**B. Municipal Liability**

[3] While there may be legitimate reasons as to why the Plaintiff was moved back into cell 16, Defendant proffered no such justification. *See Branch*, 2006 WL 2807168, at *5 (holding conditions of confinement as normal unless they are, *inter alia*, without penological justification).

Plaintiff's constitutional claims against the City are also brought pursuant to 42 U.S.C. § 1983. "[M]unicipalities may be sued directly under § 1983 for constitutional deprivations inflicted upon private individuals pursuant to governmental custom, policy, ordinance, regulation, or decision." *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) (citing *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 690-91 (1978)). "[T]o hold a [municipality] liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Id.* Thus, a *Monell* claim is not "a stand-alone cause of action under which a plaintiff may sue over a governmental policy, regardless of whether he suffered the infliction of a tort resulting from the policy . . . . Establishing the liability of the municipality requires a showing that the plaintiff suffered a tort in violation of federal law committed by the municipal actors and, in addition that their commission of the tort resulted from a custom or policy of the municipality." *Askins v. Doe* No. 1, 727 F.3d 248, 253 (2d Cir. 2013) (citing *Monell*, 436 U.S. at 690–91).

A plaintiff can prove the first "policy, custom, or practice" prong in one of four ways: (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees. *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted). As for the second and third prongs, "Plaintiff must also prove a causal

link between the policy, custom or practice and the alleged [constitutional] injury in order to find liability against a municipality." *Id.* at 277 (citing *Batista*, 702 F.2d at 397).

Here, Plaintiff has alleged no facts that the City had any custom, practice, or official policy that led to his alleged injuries nor has he alleged any facts from which such an inference may be drawn. Accordingly, Plaintiff's claim against the City is dismissed.

## V. Conclusion

For the reasons set forth above, Defendants' motion to dismiss is GRANTED as to the City and is DENIED as to Matthews, Harris, and Johnson. The parties are directed to appear for an initial pre-trial conference on **Tuesday, April 11, 2017 at 10:15 AM**. The Clerk of Court is respectfully directed to terminate the City of New York as a Defendant, and to terminate the motion, Doc. 17.

Furthermore, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Opinion and Order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purposes of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

It is SO ORDERED.

Dated: March 17, 2017
New York, New York

Edgardo Ramos, U.S.D.J.